OPINION Baum, Judge: 1. The $235,000 settlement payment. — The tax character of a payment in settlement of litigation must be ascertained by reference to the nature of the claim in respect of which the payment is made. Anchor Coupling Co. v. United States, 427 F. 2d 429, 433 (C.A. 7), certiorari denied 401 U.S. 908; Spangler v. Commissioner, 323 F. 2d 913, 916 (C.A. 9), affirming a Memorandum Opinion of this Court; Arthur H. DuGrenier, Inc., 58 T.C. 931; Dudley G. Seay, 58 T.C. 32, 37. acq. 1972-2 C.B. 3. The Commissioner’s position is that petitioner paid SDS $235,000 solely to secure a release from Ms contingent liability in respect of tlie 8,000 shares of SDS stock he had owned, that the payment therefore represented a cost of “defending or perfecting title to property,” and that it should have been added to the basis of the 8,000 shares under sections 1.212-1 (k) and 1.263 (a)-2(c) of the Income Tax Regulations and thus applied as an offset to the capital gain petitioner realized upon the sale of those shares. Petitioner maintains that the entire $235,000 was paid in satisfaction of claims related, in one way or another, to his status as a former employee of SDS and that the full amount of the payment was thus deductible by him as a business loss or expense. We hold that the settlement payment was made to secure releases from both the stock claim and a negligence claim which SDS was threatening to lodge, and therefore that part of the payment was deductible only as a capital outlay and the remaining portion represented a business expenditure deductible in full from ordinary income. Although the litigation between petitioner and SDS initially involved only a claim relating to the stock petitioner had purchased under the Employment and Stock Purchase Agreement of December 13, 1963, the character of the controversy was altered both by petitioner’s counterclaims and the possibility that SDS would bring a negligence claim against petitioner, which materialized in the course of discovery proceedings. The parties to the aforementioned lawsuit regarded petitioner’s counterclaims as being of little, if any, value, but we are satisfied by the testimony of a former officer of SDS, petitioner himself, and counsel for the respective litigants that both the stock claim and the threatened negligence claim had real value in the minds of the litigants on June 29, 1966, when they executed the General and Mutual Release Agreement. To be sure, SDS never amended its complaint to add a negligence count, but the litigants plainly undertook to settle this claim as well as the stock claim, and the terms of the release agreement were broad enough to accommodate the mutual understanding of the parties as we have found it to have been. The release instrument made no apportionment of the $235,000 settlement payment among the compromised claims. In the circumstances, we must make an allocation ourselves. See Spangler v. Commissioner, 323 F. 2d at 915-917; Harry A. Kinney, 58 T.C. 1038, 1044; Telefilm, Inc., 21 T.C. 688, 693-695;[1] cf. Dudley G. Seay, 58 T.C. at 37-39. Moreover, it is entirely proper to allocate a portion of the settlement payment to the negligence claim notwithstanding the fact that the pleadings were never amended to reflect that claim. Cf. Dudley G. Seay, 58 T.C. 32. It is our best judgment, based upon the entire record, that $100,000 of the settlement payment was attributable to petitioner’s release from the stock claim and that the remaining portion of the payment ($135,000) was made in settlement of the threatened negligence claim, and we so find as a fact. Accordingly, petitioner is entitled to deduct $135,000 in respect of the settlement payment as a business expense or loss (cf. Old Town Corporation, 37 T.C. 845, acq. 1962-2 C.B. 5), and he must treat the remaining $100,000 of that payment as an offset to the capital gain he had realized upon the sale of the 8,000 shares of SDS stock. In making the foregoing allocation we are, of course, aware that the matter is not susceptible of any precisely accurate determination, and that the most that can be expected of us is the exercise of our best judgment based upon the entire record. This we have undertaken to do, and it would serve no useful purpose to discuss the various items of evidence that we took into account. Suffice it to say, we did endeavor to make as close an approximation as we could in regard to what we considered to be the respective weights that the parties in fact placed upon the relative values of their respective claims, making appropriate allowance for a certain amount of overstatement or understatement of the claims in the testimony before us as we evaluated such testimony. Although petitioner recognizes that an allocation is appropriate in this case — indeed he has suggested several different possible allocations on brief — he has made the alternative argument that he is entitled to report the entire $235,000 payment as a business loss because all of the settled claims were somehow connected with his prior activities as an employee of SDS. "We find that position to be without merit. To the extent that the payment is properly allocable to the stock, it represents in the context of this case nothing more than a charge against the capital gain that he realized upon sale of the stock, cf. Arrowsmith v. Commissioner, 344 U.S. 6, and not a business loss, cf. United States v. Generes, 405 U.S. 93. 2. The $55,094-85 expenditure for legal services. — The tax character of petitioner’s legal expenses must be determined pursuant to the same principles that governed the nature of the' settlement payment. See Woodward v. Commissioner, 397 U.S. 572; United States v. Gilmore, 372 U.S. 39; Spangler v. Commissioner, 323 F. 2d 913; Stass Reed, 55 T.C. 32. Accordingly, an allocation of the legal expenses is in order. The apportionment of those expenditures among the two claims which petitioner and SDS were most interested in settling need not, however, correspond to the allocation of the settlement payment itself. Tlie settlement payment was apportioned pursuant to our best understanding of tlie bargain struck by tlie parties on tlie date of the execution of the release agreement. The legal fees, however, were paid for services performed over a considerable period of time, and the record plainly shows that the litigation took on a vastly different character as it developed. Whereas the lawsuit began with a claim by SDS relating to the 8,000 shares of stock (which we have held to be capital in nature), the negligence claim (which was ordinary in nature) was of primary importance to the litigants at the time the suit was settled. The possible impact of the latter claim apparently did not become manifest until the later stages of the litigation, and certain of the activities of petitioner’s attorneys in connection with that claim were plainly related to the original cause of action as well. It is stipulated only that petitioner incurred expenses in the amount of $55,091.85 for legal services performed “in connection with the lawsuit.” Apart from the facts giving rise to the inferences we have drawn above, there is little other evidence that sheds light upon the precise nature of the services performed by petitioner’s counsel. It is incumbent upon us, in the circumstances, to do the best we can with the materials at hand. Accordingly, we find as a fact that $20,000 of the legal expenditures were allocable to work performed in connection with the threatened negligence claim and hence were deductible as ordinary expenses and that the remaining legal fees of $35,094.85 constituted capital outlays[2] for work done in connection with petitioner’s defense against the stock claim. Decision will be entered under Rule 50. Telefilm, Inc., was reversed (C.A. 9, 5 A.F.T.R. 2d 1804, 55-1 U.S.T.C. par. 9453), but only in respect of the treatment of one of the components of the allocation (punitive damages), to give effect to the Supreme Court decision in Commissioner v. Glenshaw Glass Co., 348 U.S. 426, which had meanwhile been rendered. Numerous decisions cited by petitioner to support the proposition that even the legal expenses allocable to the stock claim might constitute ordinary deductions are either distinguishable from the present case on their facts or of dubious viability in the wake of United States v. Gilmore, 372 U.S. 39, and its progeny.