PAT G. GUIDRY AND GAYLE F. GUIDRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guidry v. Commissioner
Docket No. 29295-91
United States Tax Court
T.C. Memo 1994-127; 1994 Tax Ct. Memo LEXIS 135; 67 T.C.M. (CCH) 2507; March 28, 1994, Filed *135 Decision will be entered under Rule 155. In connection with six commercial loans that C made to P, C commenced a lawsuit against P alleging that P was in default on three of the loans. P denied C's allegations, raised certain affirmative defenses, and filed a counterclaim against C for damages resulting from: (1) C's alleged false representations to P, (2) C's alleged conversion of P's funds, and (3) C's alleged violations of State usury laws and the Federal Bank Holding Company Act. The requested damages consisted primarily of: (1) Actual damages equal to the amount of usurious interest included in the loans, (2) actual damages equal to the amount of P's funds that was converted by C, and (3) punitive damages. P and C subsequently executed a written settlement of their dispute, pursuant to which P received a payment of $ 925,000. Held: P failed to prove that any portion of the payment that C made to him was paid on account of a tortlike personal injury; accordingly, the payment is not excludable from P's gross income under sec. 104(a)(2), I.R.C.
Held, further, P is not liable for the additions to tax for negligence that respondent determined under sec. 6653(a)(1)(A) *136 and (B), I.R.C.; P's underpayment of his 1987 income tax was attributable to a mistake of the law concerning settlement payments. For petitioner: Fred Sullins.
For respondent: David E. Whitcomb. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court pursuant to a petition filed by Pat G. Guidry and Gayle F. Guidry (petitioners) for a redetermination of respondent's determination of deficiencies in, and additions to, their 1987 and 1988 Federal income taxes. Pursuant to Rule 122(a),[1] the parties submitted this case to the Court without trial; the record consists of the pleadings and stipulated facts with accompanying exhibits. Respondent's determination is reflected in her notice of deficiency issued to petitioners on September 18, 1991. This notice states, in part, that *137 petitioners are liable for the following amounts: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A) 6653(a)(1)(B) 1987
$ 1,650,523
-- $ 82,526
[1]
1988
29,543
$ 1,477
--
--
Following concessions by respondent, [2] *138 the issues for decision are: (1) Whether $ 925,000 in settlement proceeds received by petitioners in 1987 is excludable from their 1987 gross income under section 104(a)(2); [3] we hold that it is not, and (2) whether petitioners are liable for 1987 additions to tax for negligence under section 6653(a)(1)(A) and (B); we hold that they are not. FINDINGS OF FACT The facts in the joint stipulation and accompanying exhibits are incorporated herein by this reference. At the time they filed their petition in this case, petitioners resided in Baytown, Texas. During the years in issue, petitioners were husband and wife and filed 1987 and 1988 Forms 1040, U.S. Individual Income Tax Return, using the status of "Married filing joint return". During the 1985 through 1987 taxable years, Exxon Baytown Credit Union (Exxon) made six commercial loans to Pat G. Guidry (Guidry); each of these loans was evidenced by a promissory note. On April *139 24, 1987, Exxon commenced a lawsuit against Guidry by filing a petition in the District Court of Harris County, Texas, 192d Judicial District, alleging that Guidry was in default on three of the six loans. In connection therewith, Exxon sought the unpaid balances of these three loans with interest, late charges, and attorney's fees of not less than $ 10,000. [4] On May 8, 1987, Exxon alleged that Guidry had defaulted on the other three loans, and sought to foreclose on the collateral that secured these loans. On May 19, 1987, Guidry answered Exxon's petition generally denying all allegations therein; as affirmative defenses, Guidry alleged that: (1) Exxon fraudulently induced him to execute the notes in issue there in violation of section 1.203 of the Texas Business and Commerce Code[5] *141 and the statutes governing credit union organization, and (2) the notes in issue there charged unlawfully a usurious *140 rate of interest. In addition, Guidry filed a counterclaim against Exxon alleging that: (1) He relied to his detriment on false representations contained in a letter to him from Exxon, and this reliance resulted in actual monetary damages, [6] (2) in order to obtain financing from Exxon, Exxon forced him to assume a $ 1,638,910 loan owed to Exxon by a third party, and this assumption constituted interest that was usurious and in violation of Texas law, [7] (3) Exxon engaged in conduct that violated the Bank Holding Company Act of 1956, [8] ch. 240, 70 Stat. 133 (current version at 12 U.S.C. secs. 1971-1978 (1988)), and (4) Exxon unlawfully converted $ 637,000 of the funds that Guidry borrowed from Exxon in one of his six commercial loans, and this action constituted common law fraud and a violation of section 1.203 of the Texas Business and Commerce Code. [9] Guidry's counterclaim also contained a prayer for prejudgment interest, postjudgment interest, court costs, and all other legal or equitable relief to which Guidry was entitled. *142 On November 9, 1987, Guidry and Exxon entered into a written agreement settling all issues raised in Exxon's petition and Guidry's counterclaim (Settlement Agreement). The Settlement Agreement did not explicitly allocate the settlement among the various claims made by Guidry in his counterclaim; in relevant part, the Settlement Agreement provided: in May 19, 1987, [Exxon] filed suit against Pat Guidry * * *; in this cause [Exxon] alleges, that Pat Guidry breached his obligations to [Exxon] to repay certain loans made by [Exxon] to Pat Guidry; damages claimed included principal and interest owing on the loan, prejudgment and postjudgment interest on the amount of damages awarded [Exxon], reasonable attorneys' fees, expenses and costs incurred in such cause; * * * * * * Pat Guidry in answer to [Exxon's] Complaint filed a Counterclaim for damages against [Exxon] complaining of, among other things, violations by [Exxon] of Texas usury laws, the Federal Bank Holding Company Act and breach of depository contract; and * * * Pat Guidry on September 16, 1987, also served notice on [Exxon] and made demand against [Exxon] for damages allegedly suffered by reason of asserted violations *143 of the Texas Deceptive Trade Practices Act, fraud, and conspiracy, and other potential claims and causes of action * * *. [10]
Pursuant to the terms of the Settlement Agreement, Exxon released Guidry from all liabilities (including the $ 637,000 amount that was allegedly converted by Exxon) owed to Exxon upon execution of the Settlement Agreement, and petitioners transferred to Exxon certain collateral that secured these liabilities. [11] *144 In addition, Guidry and his attorney received and split equally a $ 1,850,000 cash payment. [12]
OPINION It is well settled that an accession to wealth is prima facie includable in gross income under section 61(a) unless a *145 narrowly construed exclusion clearly directs otherwise. [13] It is equally well settled that the exclusion from gross income under section 104(a)(2) applies to damages received through a settlement of a lawsuit only if the damages were attributable to a tortlike personal injury. [14]
For purposes of our inquiry under section 104(a)(2), *146 we draw no distinction between tortlike personal injuries that are physical and tortlike personal injuries that are nonphysical (i.e., psychological).[15] *147 Thus, for example, damages received are excludable from gross income under section 104(a)(2) if the damages were received pursuant to a settlement of a claim for a tortlike personal injury that resulted in: (1) Mental anguish, [16] (2) injury to reputation, [17] or (3) punitive damages connected with tort or tort type rights.[18] On the other hand, damages are not excludable under section 104(a)(2) if, for example, the damages were received upon the prosecution of economic rights arising out of a contract.[19] *148 Similarly, amounts received on account of a tortlike personal injury are not excludable from gross income under section 104(a)(2) if the amounts were received as statutorily imposed interest.[20]
In the context of a settlement agreement, we look to the nature of the claim underlying the payment to the taxpayer, rather than the validity of his or her claim, to determine whether he or she received the payment on account of a tortlike personal injury. [21] Such a determination is factual and is generally made by reference to the settlement agreement. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Stocks v. Commissioner, 98 T.C. 1, 10 (1992). An important factor in determining the nature of the claim is the "intent of the payor" in making the payment. Knuckles v. Commissioner, supra at 613; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. The main question to ask is: "In lieu of what were the damages awarded?" Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944) *149 (emphasis added), affg. 1 T.C. 952 (1943); see also Getty v. Commissioner, 913 F.2d 1486, 1490 (9th Cir. 1990), revg. 91 T.C. 160 (1988); Thompson v. Commissioner, 89 T.C. 632, 647 (1987), affd. 866 F.2d 709 (4th Cir. 1989). *150 To determine whether an unallocated settlement payment was made to compensate the recipient for a tortlike personal injury, we examine the settlement agreement in the context of all the facts and circumstances of the proceeding that resulted in the settlement. Factors to consider in scrutinizing the settlement agreement include the details surrounding the litigation in that proceeding, the allegations contained in the payee's complaint there, and the arguments made in the proceeding by each party there. See, e.g., Estate of Morgan v. Commissioner, 332 F.2d 144, 150-151 (5th Cir. 1964), affg. in part and revg. in part 37 T.C. 31 (1961); Threlkeld v. Commissioner, 87 T.C. 1294, 1306 (1986), affd. 848 F.2d 81 (6th Cir. 1988). None of these factors is dispositive; in a given case, any of these factors may ultimately be persuasive or ignored. Threlkeld v. Commissioner, supra at 1306. Petitioners bear the burden of proving that Exxon made the $ 925,000 payment to Guidry to compensate him for a tortlike personal injury. Rule 142(a); *151 Knuckles v. Commissioner, supra at 612; Agar v. Commissioner, supra at 284. The fact that this case was submitted to the Court fully stipulated under Rule 122 does not change or otherwise lessen petitioners' burden. Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. on other issues 943 F.2d 22 (8th Cir. 1991). We hold that petitioners have failed to meet their burden; among other things, the record is barren of evidence showing that Guidry suffered a tortlike personal injury, or that Exxon made the $ 925,000 payment to Guidry intending to settle a tortlike personal injury claim that Guidry may have had against Exxon. Because the Settlement Agreement is silent on Exxon's intent for making the $ 925,000 payment to Guidry, we must determine Exxon's intent from all the facts and circumstances underlying the State court proceeding that resulted in the settlement. Exxon's petition and Guidry's counterclaim, however, are the only evidence in this case that could assist us in making this inquiry. We find Exxon's petition and Guidry's counterclaim to be *152 of minimal value in ascertaining Exxon's intent in making the $ 925,000 payment to Guidry. We note that petitioners could have called representatives from Exxon to testify in order to ascertain Exxon's intent in making the $ 925,000 payment to Guidry. Petitioners chose not to do so; rather, petitioners opted to submit their case to the Court on a fully stipulated basis. It is well established that the failure of one party to introduce evidence within his or her control leads to the inference that the information if produced would be favorable to the opposing party. McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). It is equally well settled that a party who fails to satisfy his or her burden of proof in a fully stipulated case must accept the consequences that flow from his or her decision to submit the case to the Court in such a manner. See, e.g., King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992); *153 Borchers v. Commissioner, supra at 91. The alleged actual damages identified in the record consist of usurious interest of $ 1,638,910 and converted funds of $ 637,000. See supra notes 6-10. With respect to the alleged usurious interest, we apply the law of Texas, Threlkeld v. Commissioner, supra at 1306-1308, and conclude that any portion of the $ 925,000 payment that might have been attributable to Guidry's claim of usurious interest was not received by petitioners on account of a tortlike personal injury. First, the attempted collection of usurious interest alone is not a tort in the State of Texas. Harned v. E-Z Finance Co., 254 S.W.2d 81, 86 (Tex. 1953). Second, neither a physical nor a nonphysical injury inflicted upon a debtor is a prerequisite to asserting or recovering on a cause of action alleging a violation of Texas' usury statute; a debtor's recovery in such an action is determined under the statute and is not measured by any injury to the debtor. Williams v. Back, 624 S.W.2d 272, 275 (Tex. Ct. App. 1981). With respect to Guidry's *154 claim of conversion, petitioners failed to prove (and the record does not indicate) the portion, if any, of the $ 925,000 payment that was attributable to Guidry's claim of conversion. [22] Had the record enabled us to allocate some of the $ 925,000 payment to Guidry's claim of conversion, and had we found that Exxon paid this allocated amount on account of a tortlike personal injury, we could have bifurcated the settlement between tortlike personal injury and other injury. Stocks v. Commissioner, 98 T.C. 1, 14 (1992); Eisler v. Commissioner, 59 T.C. 634, 640-641 (1973). As mentioned above, however, we are unable to do so. Accordingly, for the foregoing reasons, we hold that petitioners may *155 not exclude any of the $ 925,000 settlement payment from their 1987 gross income. We have considered all other arguments made by petitioners and find them to be without merit. [23]
*156 Turning to the additions to tax, respondent determined that petitioners' underpayment of income taxes for 1987 was due to negligence or intentional disregard of rules or regulations. Accordingly, respondent determined, petitioners were liable for 1987 additions to tax for negligence under section 6653(a)(1)(A) and (B). Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964). Petitioners bear the burden of proving that respondent's determination of negligence is incorrect. Rule 142(a); *157 Marcello v. Commissioner, supra at 506-507; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Based on the record as a whole, we conclude that petitioners met their burden of disproving respondent's determination of additions to their 1987 tax for negligence under section 6653(a)(1)(A) and (B). The record shows that petitioners' underpayment was due to a mistake of the law concerning settlement payments, and was not due to negligence or intentional disregard of rules or regulations. Accordingly, we conclude that petitioners are not liable for the additions to tax for negligence determined by respondent under section 6653(a)(1)(A) and (B). For the foregoing reasons, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.↩
1. 50 percent of the interest due on the deficiency. ↩
2. Respondent conceded on brief that she: (1) Erroneously adjusted petitioners' 1987 taxable income to include $ 3,465,685 in income from forgiveness of debt, (2) erroneously adjusted petitioners' 1988 taxable income to include $ 63,654 in trust income, and (3) erroneously determined that petitioners were liable for a 1988 addition to tax under sec. 6651(a) equal to $ 1,477. (Sec. 6651(a) was listed incorrectly on Schedule 1 to the notice of deficiency as sec. 6653(a)(1)↩.)
3. Respondent's adjustments increasing petitioners' 1987 gross and taxable incomes adjusted automatically: (1) A $ 905 charitable contribution deduction that petitioners reported for 1987, and (2) a net operating loss (NOL) deduction that petitioners reported for 1988, and that was attributable to the NOL that they reported for 1987. Respondent's concessions and our resolution of the sec. 104(a)(2)↩ issue will necessitate a computational adjustment of petitioners' 1987 charitable deduction and 1988 NOL deduction.
4. Each of the promissory notes evidencing these loans provided for reasonable attorney's fees in the event of default.↩
5. Tex. Bus. & Com. Code Ann. sec. 1.203↩ (West 1968) provides: "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."
6. The record does not identify the nature or amount of these alleged monetary damages.↩
7. With respect to this allegation, Pat G. Guidry (Guidry) claimed that he was entitled to judgment against Exxon for twice the amount of actual damages of $ 1,638,910 in alleged usurious interest, forfeiture of the principal balances on all his notes, the extinguishment of the liens on all his collateral, and attorney's fees of not less than $ 1 million.↩
8. With respect to this allegation, Guidry claimed that he was entitled to actual damages of not less than $ 1,638,910, punitive damages equal to three times the amount of actual damages, attorney's fees of not less than $ 1 million, costs, and any other legal or equitable remedies under the Bank Holding Company Act of 1956, ch. 240, 70 Stat. 133 (current version at 12 U.S.C. secs. 1971-1978 (1988)↩). The record does not identify the nature of these alleged actual damages; we assume that these damages were claimed with respect to alleged usurious interest.
9. With respect to this allegation, Guidry claimed that he was entitled to actual damages equal to the amount converted and punitive damages equal to five times this amount.↩
10. The record does not contain this demand letter, and does not indicate the nature or amount of the alleged damages.↩
11. Upon execution of the Settlement Agreement, the liabilities aggregated $ 3,465,684.44, and the collateral was valued at $ 1,471,016.04. Petitioners and respondent stipulated that $ 1,357,668.40 -- i.e., the difference between the liabilities and the value of the collateral, with an adjustment for the $ 637,000 amount allegedly converted by Exxon -- constituted forgiveness of debt income. The record indicates that the $ 1,638,910 loan assumed by Guidry was not included in the $ 3,465,684.44 of liabilities mentioned above, and Guidry was not liable for any of this $ 1,638,910 loan upon execution of the Settlement Agreement.↩
12. Taxpayers generally may deduct attorney's fees that are incurred in connection with a lawsuit to the extent that the fees are ordinary and necessary business expenses under sec. 162. Taxpayers may not deduct attorney's fees, however, to the extent that the fees are allocable to a class of income exempt from taxation. In the case of a settlement that includes damages both includable in income under sec. 61(a) and excludable from income under sec. 104(a)(2), the Court generally determines the deductibility of any underlying attorney's fees by allocating the fees in the same proportion as the excludable and includable portions of the settlement. Stocks v. Commissioner, 98 T.C. 1, 18↩ (1992). Because respondent has not objected to petitioners' treatment of their attorney's fees in the case at hand, we limit our inquiry to the net settlement proceeds received by petitioners, and do not address the deductibility of their attorney's fees.
13. See, e.g., United States v. Burke, 504 U.S.   ↩, 112 S.Ct. 1867, 1878 (1992) (Souter, J., concurring in the judgment), and the cases cited therein.
14. United States v. Burke, 504 U.S.     112 S. Ct. at 1872 ("In order to come within the section 104(a)(2) income exclusion, * * * [taxpayers] therefore must show that Title VII, the legal basis for their recovery of backpay, redresses a tortlike personal injury"); see also Downey v. Commissioner, 97 T.C. 150, 161 (1991), adhered to on reconsideration 100 T.C. 634 (1993); sec. 1.104-1(c), Income Tax Regs.↩
15. Threlkeld v. Commissioner, 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Seay v. Commissioner, 58 T.C. 32, 40 (1972); see also United States v. Burke, 504 U.S. at    , 112 S. Ct. at 1871-1872. With respect to the inclusion of both physical and nonphysical tortlike personal injuries in the term "personal injuries", under sec. 104(a)(2), Congress previously considered and rejected legislation to amend sec. 104↩ to limit its application to physical injuries. See H. Rept. 101-247, at 1354-1355 (1989) (explaining proposed sec. 11641 of H.R. 3299, 101st Cong., 1st Sess. (1989)).
16. Threlkeld v. Commissioner, supra at 1297; Church v. Commissioner, 80 T.C. 1104, 1110 (1983); Seay v. Commissioner, supra at 37-38; see also United States v. Burke, 504 U.S. at    ↩, 112 S. Ct. at 1871-1872.
17. Miller v. Commissioner, 93 T.C. 330 (1989), revd. on other grounds 914 F.2d 586 (4th Cir. 1990); Threlkeld v. Commissioner, supra↩.
18. Horton v. Commissioner, 100 T.C. 93, 96 (1993). In this regard, sec. 7641(a) of the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. 101-239, 103 Stat. 2106, 2379, amended sec. 104 to make its exclusion inapplicable to punitive damages received in cases not involving physical injury or sickness. This limitation is not applicable to the years in issue; the amendment is inapplicable to amounts received before July 11, 1989. OBRA sec. 7641(b), 103 Stat. 2379; Horton v. Commissioner, supra↩ at 94 n.2.
19. Stocks v. Commissioner, supra at 9; Downey v. Commissioner, 97 T.C. at 160; see also United States v. Burke, 504 U.S. at    ↩, 112 S. Ct. at 1870-1871.
20. Kovacs v. Commissioner, 100 T.C. 124, 130↩ (1993).
21. United States v. Burke, 504 U.S. at    , 112 S. Ct. at 1872; Stocks v. Commissioner, supra at 10; Downey v. Commissioner, 97 T.C. at 161. In the context of a suit, by contrast, the nature of the claim is generally determined by the basis on which the trier of fact awarded the damages. Metzger v. Commissioner, 88 T.C. 834, 848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Bent v. Commissioner, 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3d Cir. 1987); see also Miller v. Commissioner, T.C. Memo. 1993-49 (on remand), supplemented by T.C. Memo. 1993-588↩.
22. In this regard, we note that Guidry's counterclaim for usurious interest was his principal claim for damages, and that it appears that Exxon's primary (if not exclusive) purpose in making the $ 925,000 payment to Guidry was to settle his usurious interest claim.↩
23. Petitioners' briefs unexpectedly raised numerous alternative arguments for excluding the $ 925,000 settlement proceeds from their gross income. These alternative arguments, in turn, unexpectedly raised numerous new issues. We refuse to consider these new issues; they were not properly placed before the Court. If petitioners had wanted the Court to consider these new issues, petitioners should have included them in their petition or otherwise preserved them. Rule 34(b)(4) and (5); Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Messer v. Commissioner, 52 T.C. 440, 455 (1969), affd. 438 F.2d 774 (3d Cir. 1971); see also Seligman v. Commissioner, 84 T.C. 191, 198 (1985) (Court will not consider issues first raised in brief when surprise and prejudice are found to exist), affd. 796 F.2d 116↩ (5th Cir. 1986).