T.C. Memo. 2009-162


UNITED STATES TAX COURT


EMBLEZ LONGORIA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26989-07.                    Filed July 2, 2009.


        Beginning in 1988 P suffered discrimination in his
workplace, the apparent results of which included some
physical injuries as late as 1998.  In 2002 P sued his
employer in State court alleging discrimination, but
his complaint did not mention the physical injuries.
In 2005 P received a lump-sum award in settlement of
the lawsuit, and the settlement agreement allocated no
portion of the award to physical injuries.  On the
advice of a certified public accountant (C.P.A.), P
reported this settlement award on his 2005 Federal
income tax return as non-taxable income pursuant to
I.R.C. sec. 104(a)(2).  R determined a deficiency in
P's Federal income tax for 2005 and an accuracy-related
penalty under I.R.C. sec. 6662(a) on the basis that the
settlement award was not properly excludable from gross
income under I.R.C. sec. 104(a)(2).  P petitioned this
Court for redetermination of the deficiency and the
related penalty.

        <u>Held</u>:  P's settlement award is not excludable from
gross income under I.R.C. sec. 104(a)(2), because P

failed to prove that the settlement award, or any part thereof, was received on account of personal physical injuries or physical sickness.

Held, further, P is not liable for the I.R.C. sec. 6662(a) accuracy-related penalty because P reasonably and in good faith relied on the advice of a C.P.A. in reporting the settlement award as non-taxable income.

Joseph M. Pinto, for petitioner.

Gary J. Merken, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  The Internal Revenue Service (IRS) determined a deficiency of $50,066 in, and an accuracy-related penalty under section 6662(a)[1] of $10,013 on, petitioner Emblez Longoria's Federal income tax for 2005.  The issues for decision are:  (1) whether the $156,667 Mr. Longoria received from the State of New Jersey in 2005 to settle a lawsuit is excludable from his gross income under section 104(a)(2); and (2) whether Mr. Longoria is liable for an accuracy-related penalty under section 6662(a).  For the reasons set forth below, we hold that (1) the $156,667 proceeds of the lawsuit settlement was not properly excludable from Mr. Longoria's gross income under

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

section 104(a)(2); but (2) Mr. Longoria is not liable for an accuracy-related penalty under section 6662(a).

## FINDINGS OF FACT

This case was tried in Philadelphia, Pennsylvania, on February 24-25, 2009. The stipulation of facts filed February 24, 2009, and the attached exhibits are incorporated herein by this reference. At the time Mr. Longoria filed his petition, he resided in Pennsylvania.

### History of Discriminatory Practices by the New Jersey State Police

For decades the New Jersey State Police has been accused of discriminatory practices. In 1975 the U.S. Department of Justice (DOJ) filed a lawsuit against the New Jersey State Police under the Civil Rights Act of 1964 and the Equal Opportunity Act of 1972, alleging that the New Jersey State Police overlooked qualified minority and female applicants for employment. As a result of the DOJ's lawsuit, the New Jersey State Police agreed in 1975 to a Consent Decree and Order to increase the number of African-American and Hispanic troopers to 14 percent of the police force within 5 years. After 1975, three consent decrees were entered between the New Jersey State Police and the DOJ. The decrees mandated that the DOJ supervise the New Jersey State Police until 1992 to help ensure efforts to increase the percentage of minority and female troopers to a level consistent with that of the diverse population of New Jersey.

The 1975 consent decree was dissolved in October 1992. At the time of the termination, the New Jersey State Police had failed to meet the mandate of that decree. In July 1999 a "Final Report of the State Police Review Team" (July 2, 1999) concluded that the New Jersey State Police had made insufficient progress in the recruitment and hiring of females and minorities since 1992. The report found that the New Jersey State Police had little regard for the professional growth and the diversity of its members. Furthermore, the report found that the New Jersey State Police habitually failed to promote minorities and women and that if a minority or female employee complained of disparate treatment, the response of the New Jersey State Police was to delay or else to fail altogether to take the complaint seriously.

Discrimination Against Mr. Longoria

Mr. Longoria entered the New Jersey State Police Academy in March 1988 and served as a New Jersey State trooper beginning in July 1988. During the course of his career as a New Jersey State trooper, Mr. Longoria, who is Puerto Rican, complained about racial discrimination in the workplace. During his employment he suffered physical injuries that appear to have been related to the discriminatory practices by the New Jersey State Police.[2]

---

[2]For purposes of determining the taxability of the settlement proceeds at issue, we need not determine definitively whether any given injury was in fact the result of discrimination. Rather, it is sufficient that Mr. Longoria makes a

(continued...)

Injury During Training

In June 1988 while he was at the State Police Academy, Mr. Longoria was singled out to participate in a wrestling training exercise where he was injured when his weapon struck his rib cage. He sustained bruised ribs and experienced severe pain. In another exercise a trooper instructor--who wanted Mr. Longoria to resign--purposely blocked the doorway of the gas chamber during a training session, causing Mr. Longoria to excessively inhale a noxious chemical agent and suffer gagging and burning in his lungs. Mr. Longoria was singled out during a swimming exercise, as many other minority recruits had been in the past, by being required to swim extra laps while physically exhausted, which sickened him.

Injury as a Trooper

After he passed his training and became a New Jersey State trooper, Mr. Longoria suffered additional injuries as the apparent direct result of discrimination. In November 1989 while Mr. Longoria was out on patrol, he encountered a suspect. Before approaching the individual, Mr. Longoria called his station and

---

[2](...continued)
colorable contention that the injuries were the result of discrimination, since his settlement with the State of New Jersey could have taken colorable damages into account. For that reason the subsequent discussion refers to injuries as the apparent result of the discrimination that Mr. Longoria suffered and does not attempt to find the extent to which his employer's discrimination was in fact the proximate cause of the injuries.

requested backup.  The station was near Mr. Longoria's location, yet no one responded to his call for backup.  As a result, Mr. Longoria attempted to arrest the individual by himself, and he injured his back when the suspect resisted arrest.  Had Mr. Longoria's backup arrived, the arrest would have been easier, and it is likely that he would not have been injured.

In 1998 Mr. Longoria's locker was top-loaded by a group of renegade troopers known as "The Phantom" or the "Lords of Discipline" in retaliation for his complaints.  The renegade troopers put all of Mr. Longoria's gear, including his vest, boots, and leather onto the top shelf to make the locker top-heavy.  The arrangement had its intended effect when Mr. Longoria opened the locker, it fell on him, and he injured his back.

Mr. Longoria experienced additional injury that may have been made more likely by his having been given substandard duty assignments as a result of his minority status.  In February 1990 Mr. Longoria was injured when he was sent out to investigate a wild raccoon sighting, an assignment he received because of his minority status and which would usually have been handled by a local animal control officer.  Mr. Longoria was bitten or scratched by the rabid animal, and the injury required him to undergo painful rabies shots, causing swelling, nausea, and flu-like symptoms which resulted in his missing substantial time from work.  In 1991 Mr. Longoria sustained injury when his patrol

vehicle caught fire.  Like other minority troopers, Mr. Longoria was assigned a substandard vehicle with high mileage, which he believes accounts for the fire.  He escaped from the fire but suffered from smoke inhalation.[3]

As a result of these injuries Mr. Longoria sometimes sought medical attention and required time off.  Mr. Longoria was allowed sick leave with pay, and the State of New Jersey paid all of Mr. Longoria's medical bills.  Mr. Longoria suffered no lost wages or out-of-pocket medical expenses as a result of his injuries.

Mr. Longoria's State Court Lawsuit

As a result of the discrimination Mr. Longoria had experienced during his employment, he filed complaints with the U.S. Equal Employment Opportunity Commission, and he also filed an action in Federal District Court in 1999 against the State of

---

[3]Mr. Longoria also suffered some injuries with a more attenuated relation to ethnic discrimination:  In June 1989 he was assigned to the Flemington Station and, as a minority State trooper, became almost a personal caddy to the commander. Because of his unfamiliarity with the area and the expectations of the commander that he be in the area of the commander's personal residence on patrol, he was involved in an auto accident while on patrol, injuring his back.  No non-minority trooper ever received this assignment, and Mr. Longoria attributed a higher risk of accident to this sort of assignment.  In May 1990 Mr. Longoria was assigned to an area where he was required to make arrests on the basis of "profiling" for sexual orientation. Mr. Longoria believed that this assignment was in retaliation for his complaints about discrimination.  While on that patrol, he was involved in another auto accident--again, as the result (he believed) of an increased risk of accident in an unfamiliar area--and he re-injured his back.

New Jersey concerning the discrimination. The District Court dismissed the Federal charges on the State's motion for summary judgment and dismissed without prejudice the supplemental State law claim. Following the dismissal of his State law claim in the Federal District Court action, in 2002 Mr. Longoria filed a suit in State court against the State of New Jersey, styled <u>Emblez Longoria v. State of New Jersey, et. al.</u>, No. MER-L-1533-02 (N.J. Super. Ct. Law Div.).

On July 29, 2003, Mr. Longoria filed his fourth amended complaint in that lawsuit. His highly detailed complaint sets forth a history of alleged minority hiring practices by the New Jersey State Police beginning in 1961 and a DOJ lawsuit in 1975 that resulted in a consent degree. The complaint describes various alleged workplace incidents directed at some of Mr. Longoria's fellow recruits and troopers, as well as incidents of racial discrimination in the workplace experienced by Mr. Longoria himself.

Mr. Longoria's complaint asked for compensatory and punitive damages, reasonable attorney's fees, court costs and interest thereon, and equitable and injunctive relief based on four separate counts: (1) violation of the New Jersey Law Against Discrimination Act (LAD), N.J. Stat. Ann. secs. 10:5-1 et. seq, (2) violation of 42 U.S.C. section 1983, a statute allowing a civil action for deprivation of rights, (3) direct constitutional

claims, and (4) violation of the New Jersey Conscientious Employees Protection Act (CEPA), a whistleblower statute, N.J. Stat. Ann. secs. 34:19-1 et. seq.  The only enumeration in the complaint of the damages Mr. Longoria suffered as a result of the State of New Jersey's actions appears in paragraph 102 of the first count:

> As a result of the unlawful retaliation personally experienced by Plaintiff, he has suffered loss of income; loss of fringe benefits (including but not limited to medical benefits, dental benefits, and pension benefits); loss of seniority in higher positions; severe mental anguish; anxiety; stomach problems; sleep disorder; stress; diminution of the quality of his life and other hedonistic injury.

In addition to those damages, there are several allegations in the complaint of fear and emotional distress, as well as significant stress.  Mr. Longoria's complaint does not allege that he experienced physical injuries during his employment as a result of his discrimination, such as ribs being bruised in a wrestling exercise, excessive exposure to a chemical agent, smoke inhalation from a fire, being bitten by a rabid racoon, and back injury.  His attorney in the discrimination suit, Mr. Buckman, brought these physical injuries to the attention of the State of New Jersey during the settlement negotiations, but no evidence was offered to show that physical injuries were ever mentioned in writing during the pendency of the State court suit, and Mr. Longoria made no showing that the State of New Jersey

attached any significance to his physical injuries in settling the case.

On October 3, 2005, the State of New Jersey and Mr. Longoria entered into a Release and Settlement Agreement under which Mr. Longoria would be paid $156,667 by the State of New Jersey for a release of "all claims and rights which he may have against" the State of New Jersey.  The settlement agreement did not allocate the payment of $156,667 to any specific claim or alleged injury, but we find that none of the award was intended to compensate Mr. Longoria for lost wages or backpay.  Even when Mr. Longoria was injured and out on sick leave he received 100 percent of his pay.  Furthermore, any lost wages due to a lack of promotion were de minimis.  Mr. Longoria testified that he would have received $800 more per year for being promoted to detective, but that there was no pay difference between the officer position he held and the specialist jobs he was interested in. Paragraph 5 of the settlement agreement provided that the "State of New Jersey shall issue an IRS 1099 Form with respect to the consideration paid to" Mr. Longoria.  As agreed in the settlement agreement, the State of New Jersey paid Mr. Longoria $156,667 in 2005 and issued him a Form 1099-MISC, Miscellaneous Income, reflecting the settlement payment.

Tax Advice From Certified Public Accountant

Before signing the settlement agreement, Mr. Longoria discussed with his attorney, Mr. Buckman, the nature of the settlement and its possible tax implications. Mr. Buckman testified that he and Mr. Longoria talked about the settlement being all for pain and suffering, because that (and not lost wages) was the essence of Mr. Longoria's case. When Mr. Longoria pressed him about the taxability of the settlement award, Mr. Buckman instructed Mr. Longoria to consult a tax professional. In past years Mr. Longoria had hired return preparers at a cost of $200 to $250, but Mr. Longoria heeded Mr. Buckman's advice and retained a certified public accountant (C.P.A.) to prepare his 2005 Form 1040, U.S. Individual Income Tax Return, at a cost of $600.

The C.P.A. Mr. Longoria retained had been preparing tax returns for 26 years and testified that he is familiar with the law concerning the taxability and non-taxability of settlement awards.[4] Mr. Longoria gave the C.P.A. the Form 1099-MISC issued

---

[4]Respondent objected to the testimony of the C.P.A. on the ground that the C.P.A.'s identity was not revealed to him at least 2 weeks before the trial as was required by the standing pretrial order. Rather, Mr. Longoria identified the C.P.A. firm (not the individual accountant) in his pretrial memorandum received by respondent's counsel 4 business days before the trial. However, the C.P.A.'s somewhat illegible signature did appear on Mr. Longoria's Form 1040, along with the perfectly legible name of the accounting firm. Respondent made no representation of any frustrated attempt to get information from

(continued...)

by the State of New Jersey, his Forms W-2, Wage and Tax

Statement, and other information regarding some expense

deductions.  When he met with the C.P.A., Mr. Longoria did not

have any papers with him regarding the lawsuit or settlement.[5]

However, Mr. Longoria explained to the C.P.A. that he had been a

party to litigation with the State of New Jersey and had received

an award to settle all his claims, but that the settlement

agreement did not specifically allocate the monetary award among

his claims.  In the process of determining whether Mr. Longoria's

settlement would be excludable from gross income under section

104(a)(2), the C.P.A. read through section 104(a)(2) of the

Internal Revenue Code and inquired whether the settlement was for

---

[4](...continued)
the accounting firm at any time or to interview the C.P.A. in the
4 days before trial.  When he testified, the C.P.A. offered no
new documents as exhibits and made no new allegations that
constituted surprise to respondent, but only corroborated the
testimony of Mr. Longoria himself--except that in one respect
discussed below the C.P.A.'s testimony was unhelpful to
Mr. Longoria (i.e., that Mr. Longoria did not show the settlement
agreement to the C.P.A.).  Quite apart from the testimony of any
witness, the Form 1040 itself makes it very clear that
Mr. Longoria did hire a C.P.A. who did prepare a Form 1040 that
reported the settlement proceeds (on "Statement 1" attached to
the Form 1040), and the C.P.A.'s testimony only confirmed that.
In this circumstance we find that the C.P.A.'s testimony should
be admitted.

[5]The C.P.A. testified that Mr. Longoria did not give him the
settlement agreement or anything from the court during their
meeting, while Mr. Longoria stated that he did.  We found the
C.P.A.'s recollection of that detail of the meeting to be more
credible and conclude that Mr. Longoria did not present the
C.P.A. with any paperwork related to the lawsuit and settlement.

injury and sickness.  Mr. Longoria confirmed that he had suffered injury and sickness.  Nonetheless, Mr. Longoria did represent to the C.P.A. that he was not sure whether the entire settlement was for his physical injuries or only a portion of it was.  He informed the C.P.A. that the settlement settled all claims he had against the State, but the C.P.A. did not inquire as to what the underlying causes of action were that gave rise to the settlement.

When the C.P.A. learned that Mr. Longoria did not have the settlement agreement with him, the C.P.A. did not require Mr. Longoria to provide it.  He did not ask for the complaint or any other documentation relating to the lawsuit.  The C.P.A. made no attempt to discuss the underlying case with either Mr. Longoria's counsel or anyone from the State of New Jersey.  Instead, he simply relied on Mr. Longoria's representations that the settlement award was for wrongs that included his physical injuries and that the settlement agreement made no discernible allocation of damages.  From those facts, the C.P.A. concluded that all of Mr. Longoria's settlement was excludable from gross income under section 104(a)(2).

The C.P.A. then prepared Mr. Longoria's 2005 Form 1040 and included with it an attached Statement 1, Miscellaneous Income. Although the C.P.A. had concluded that the settlement award was non-taxable, and that the award would not have to be reported at

all, the C.P.A. proposed that Mr. Longoria report the $156,667 payment received from the State of New Jersey under the settlement agreement as a non-taxable injury and sickness award on Statement 1 with his Form 1040. The C.P.A. testified that he included the Statement 1 with Mr. Longoria's Form 1040 because the settlement payment was a significant item and a Form 1099-MISC had been issued. He did not want Mr. Longoria's Form 1040 to be flagged for audit for failure to include such a substantial item, and the C.P.A. did not want it to seem as if they were hiding anything. Following the C.P.A.'s advice in good faith, Mr. Longoria included the Statement 1 with his Form 1040 and did not include any portion of the $156,667 settlement award in his 2005 taxable income. Mr. Longoria timely filed his 2005 Form 1040.

The Statutory Notice of Deficiency and the Commencement
of This Suit

The IRS disagreed with Mr. Longoria's position that the $156,667 settlement award was excludable from gross income under section 104(a)(2), and on September 24, 2007, the IRS mailed a statutory notice of deficiency to Mr. Longoria. In that notice the IRS determined a deficiency of $50,066 and an accuracy-related penalty of $10,013 under section 6662(a) for 2005. Mr. Longoria timely petitioned this Court on November 23, 2007, for a redetermination of that deficiency and the accompanying penalty. In his petition Mr. Longoria stated that he "does not

believe the taxes, interest and penalties claimed are due in whole or in part because the amount received by [him] is not considered income in whole or in part under the law."

OPINION

I.  Taxability of Settlement Award

As a general rule, the IRS's determinations are presumed correct, and the taxpayer has the burden of establishing that the determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 61(a) provides the following broad definition of the term "gross income":  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  Section 61(a) is thus broad in its scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a) provides that gross income does not include:

> (2) the amount of any damages[6] (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness * * *.
>
> *       *       *       *       *       *       *

---

[6]The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.  Sec. 1.104-1(c), Income Tax Regs. (26 C.F.R.).

> * * * For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.  The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.

The legislative history shows that "[i]t is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.  Therefore, to be excludable from gross income under section 104(a)(2), a settlement award must be paid to a taxpayer on account of physical injury or physical sickness, which does not include emotional distress or symptoms thereof.[7]

Where damages are received pursuant to a settlement agreement like Mr. Longoria's, the nature of the claim that was the actual basis for settlement controls whether those damages are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claims asserted in the lawsuit.  See Bent v. Commissioner, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80 T.C.

---

[7]Although section 104(a)(2) allows damages for pain and suffering to be excluded from income to the extent of costs paid for medical care to treat the condition, that provision provides no benefit to Mr. Longoria, because he suffered no out-of-pocket medical expenses related to any pain and suffering since the State of New Jersey paid for all of his medical expenses.

1104, 1106-1107 (1983); Glynn v. Commissioner, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). The determination of the underlying nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972).

Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 126. If the settlement agreement lacks express language stating the claims that payment was to settle, the intent of the payor (here, the State of New Jersey) is critical to that determination. Knuckles v. Commissioner, supra at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21.

It is Mr. Longoria's position that he suffered physical injury and sickness as a result of the discrimination and retaliation to which he was subjected while serving as a New Jersey State trooper. As a result, when the State of New Jersey settled the lawsuit Mr. Longoria had initiated for "all claims and right he may have against * * * [the State of New Jersey] including all claims for pain and suffering" (emphasis added),

Mr. Longoria took this to be primarily a settlement for the physical injury and sickness he had sustained. Therefore, Mr. Longoria, on advice of a tax professional, concluded that his settlement award was non-taxable under section 104(a)(2).

It is respondent's position that since the settlement agreement between Mr. Longoria and the State of New Jersey is silent as to the allocation of the monetary award to certain damages, Mr. Longoria's complaint in the suit that gave rise to the settlement must dictate which claims were at issue and settled by the agreement. As none of Mr. Longoria's claims in that complaint alleged physical injury or sickness, other than symptoms attributable to emotional distress, respondent argues that none of Mr. Longoria's settlement should be excludable from his gross income under section 104(a)(2).

We must reject Mr. Longoria's position. The settlement agreement is essentially silent as to what claims the settlement intended to satisfy--it settled "all claims and rights which * * * [Mr. Longoria] may have against * * * [the State of New Jersey] including all claims for pain and suffering". Since "pain and suffering" is a broad term that includes emotional distress and its symptoms, the agreement gives no description that would exclude the damages under section 104(a)(2). We must therefore look to Mr. Longoria's State court complaint to see whether it states more particular claims (i.e., "physical injury

or <u>physical</u> sickness") that would justify exclusion.  See <u>United States v. Burke</u>, <u>supra</u> at 237; <u>Church v. Commissioner</u>, <u>supra</u> at 1106-1107.  The claims Mr. Longoria asserted against the State of New Jersey were for discrimination, retaliation, and civil rights violations; and the damages Mr. Longoria claimed were:

> loss of income; loss of fringe benefits (including but not limited to medical benefits, dental benefits, and pension benefits); loss of seniority in higher positions; severe mental anguish; anxiety; stomach problems; sleep disorder; stress; diminution of the quality of his life and other hedonistic injury.

Most of these injuries--loss of income, loss of fringe benefits (including but not limited to medical benefits, dental benefits, and pension benefits), and loss of seniority in higher positions--are non-physical.  And the alleged injuries which are, in whole or in part, physical--i.e., severe mental anguish, anxiety, stomach problems, sleep disorder, stress, diminution of the quality of his life and other hedonistic injury--arise from the emotional distress Mr. Longoria suffered and the symptoms of that distress.  Because section 104(a)(2) and the flush language of section 104(a) require that, to be excluded from income, any damages must arise from personal injury or personal sickness <u>other than</u> emotional distress or the symptoms thereof, we cannot hold that the damages claims in Mr. Longoria's complaint were for the types of injuries whose compensation is meant to be excluded from income under section 104(a)(2).

Although Mr. Longoria gave credible testimony at trial about other injuries that were plainly physical--e.g., bruised ribs, smoke inhalation, animal bite, and back injury--none of these injuries was alleged in Mr. Longoria's complaint, and we cannot find that the State of New Jersey agreed to settle because of them. While the settlement agreement does state that the settlement "releases all claims including those of which * * * [the State of New Jersey] is not aware", it was Mr. Longoria's burden to prove some discernible allocation between the emotional distress-type damages that were pleaded in the State court complaint and the physical injuries about which he testified at the trial in this case. Mr. Longoria did not carry that burden. Without much explanation, Mr. Longoria's posttrial brief asks us to allocate one-third of the $156,667 settlement award to physical injuries and two-thirds to non-physical injuries, punitive damages, and costs. Without an evidentiary basis for such an allocation, we decline to adopt Mr. Longoria's allocation or to attempt any other.

In his posttrial brief Mr. Longoria cites <u>Eisler v. Commissioner</u>, 59 T.C. 634 (1973), for the proposition that the Court should use its best judgment in coming up with an allocation of damages between claims, and that even if a litigant failed to raise a cause of action in the pleadings or by amendment thereto, the Court can allocate the settlement to that

cause of action if it played a role in effecting the settlement. Mr. Longoria's statement of the holding in Eisler is correct, but his reliance on it is misplaced.

In Eisler (a case not involving exclusion under section 104(a)(2)), the Court did in fact find that a claim not pleaded in the complaint was nonetheless settled by an unallocated settlement agreement, because the claim was brought up between the respective parties' counsels during settlement negotiation. However, the Court reached that conclusion only because it was "satisfied by the testimony of a former officer of * * * [the defendant in the State court lawsuit], petitioner himself, and counsel for the respective litigants that both the stock claim and the threatened negligence claim had real value in the minds of the litigants * * * when they executed the * * * Release". Id. at 640. The testimony in Eisler was sufficient for the Court to determine that the unpleaded claim was contemplated as part of the settlement. See also Seay v. Commissioner, 58 T.C. 32 (1974) (where the negotiators for each party testified, the taxpayer successfully established that the nature of claim was for personal injury). Mr. Longoria offered no analogous testimony and has not proved the intent of the State of New Jersey.

While we find Mr. Longoria's testimony to be sincere and find that he suffered discrimination from his employer that

apparently led to several physical injuries, the determinative issue is whether the State of New Jersey intended to compensate Mr. Longoria for his physical injuries when it paid him the settlement award. On the basis of the record before us, we cannot find that the State of New Jersey placed any importance on Mr. Longoria's physical injuries.

The only relevant testimony Mr. Longoria presented regarding the State of New Jersey's intent was that of his attorney in the State court lawsuit, Mr. Buckman. Mr. Buckman testified that he did bring up Mr. Longoria's physical injuries during his settlement negotiations with the State's attorney, Catherine Tamasik, but he testified that Ms. Tamasik dismissed Mr. Longoria's physical injuries as insignificant by saying "well those are only a handful many years ago, I don't think a jury would be that outraged." Mr. Buckman also acknowledged that "I don't know what [Ms. Tamasik's] true opinion was" and that since she contacted him regarding a settlement before he told her about Mr. Longoria's physical injuries, one could assume "she already had an opinion that * * * the case should be settled."

Respondent argues that Mr. Longoria's physical injuries could not have been part of the lawsuit that was settled because any such claims would have been barred by the statute of limitations. However, Mr. Longoria argues that his injuries were excepted from the general statute of limitations under the theory

of continuing violation.[8]  We need not reach the question of whether damages from the physical injuries sustained by Mr. Longoria were time-barred (as respondent claims) or were recoverable under a continuing violation theory (as Mr. Longoria claims).  See Natl. R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (distinguishing between discrete acts of discrimination and a continuing violation theory, the Court held that discrete acts of discrimination, if time-barred, cannot be revived by other discrete acts of discrimination, even if similar); Caggiano v. Fontoura, 804 A.2d 1193 (N.J. Super. Ct. App. Div. 2002) (applying rationale of Natl. R.R. Passenger Corp. v. Morgan, supra, to an LAD claim under N.J. Stat. Ann. secs. 10:5-1 through 10:5-49 (West 2002 & Supp. 2009)).  Even assuming that recovery was potentially available in the State court lawsuit for Mr. Longoria's physical injuries, Mr. Longoria did not present any witness from the State of New Jersey to testify as to its intent, nor did he present any other evidence from which we might infer the State's actual intent.  Therefore, we cannot determine

---

[8]A continuing violation allows a claim to proceed so long as at least one of a series of acts, which all together created a cause of action, fell within the statutory period.  New Jersey applies the continuing violation theory to claims under the New Jersey Law Against Discrimination, N.J. Stat. Ann. secs. 10:5-1 through 10:5-49 (West 2002 & Supp. 2009).  See Wilson v. Wal-Mart Stores, 729 A.2d 1006 (N.J. 1999).

the State of New Jersey's intentions in settling the lawsuit so as to make an allocation as the Court did in Eisler.

The character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. See Agar v. Commissioner, 290 F.2d at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). Mr. Longoria did not establish that he received the $156,667 settlement award, or any identifiable part thereof, from the State of New Jersey on account of personal physical injuries or physical sickness. For that reason we find that the $156,667 is not excludable under section 104(a)(2) from Mr. Longoria's gross income for his tax year 2005.

## II. Accuracy-Related Penalty Under Section 6662(a)[9]

### A. Mr. Longoria's Underpayment Was Attributable To a Substantial Understatement of Income Tax Under Section 6662(b)(1) and (d)(1).

The IRS determined that Mr. Longoria was liable for a section 6662(a) accuracy-related penalty for 2005 on account of his failure to report the $156,667 settlement payment as gross income. Section 6662(a) and (b)(1) and (2) imposes a 20-percent

---

[9]Respondent's posttrial brief argued that Mr. Longoria had conceded the penalty because his "petition did not request that the penalty be redetermined." Although the petition did not explicitly plead reasonable cause as a defense to the asserted accuracy-related penalty, Mr. Longoria's pretrial memorandum raised this defense, and respondent made no objection to Mr. Longoria's testimony as to his reliance on the advice of a C.P.A. We hold that this issue was tried by consent.

penalty on an underpayment of tax that results either from negligence[10] or disregard of rules and regulations or from a substantial understatement of income tax. By definition, an understatement of income tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Mr. Longoria's understatement of income tax of $50,066 exceeds 10 percent of the tax required to be shown on his return--i.e., 10 percent of $72,415--and is greater than $5,000. In such a case, the accuracy-related penalty of section 6662(a) is mandatory--that is, the statute says it "shall be added"-- unless the taxpayer can show that the understatement was due to "reasonable cause * * * and that the taxpayer acted in good faith". Sec. 6664(c)(1). Respondent has carried the burden of production imposed by section 7491(c), leaving Mr. Longoria with the burden of proving reasonable cause. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). Therefore, Mr. Longoria will be liable for the section 6662(a) accuracy-related penalty unless he can show his substantial understatement

---

[10]Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 1.6662-3(b)(1), Income Tax Regs. Respondent has not alleged Mr. Longoria was negligent in excluding the settlement award from his gross income under section 104(a)(2). Therefore, whether Mr. Longoria was negligent is a question we need not reach.

of Federal income tax was due to reasonable cause and that he acted in good faith.

B.   Mr. Longoria Has Shown Reasonable Cause and Good Faith Which Excuses Him From the Accuracy-Related Penalty Under Section 6662(a).

The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances, including the extent of the taxpayer's efforts to assess his or her proper tax liability; the taxpayer's education, knowledge, and experience; and the taxpayer's reasonable reliance on a tax professional.  Sec. 1.6664-4(b)(1), Income Tax Regs. (26 C.F.R.). The extent of the taxpayer's efforts to assess the proper tax liability is generally the most important factor.  Id.  Good-faith reliance on professional advice concerning tax laws may be a defense to section 6662(a) penalties.  United States v. Boyle, 469 U.S. 241, 250-251 (1985); see also sec. 1.6664-4(b)(1), Income Tax Regs.  Reliance on professional advice is not an absolute defense to the section 6662(a) penalty, Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); but reasonable cause exists where a taxpayer relies in good faith on the advice of a qualified tax adviser and the taxpayer provided the adviser with all necessary and accurate information, see Neonatology

Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Mr. Longoria is not liable for the section 6662(a) penalty because he reasonably and in good faith relied on the advice of a tax professional in reporting the settlement payment as non-taxable income. Mr. Longoria was aware that his settlement from the State of New Jersey might have tax implications. Therefore, after his own attorney could not advise him as to the tax consequences of the settlement, he did not simply seek tax advice from his regular return preparer but rather, at a greater cost, sought advice from a licenced tax professional, a C.P.A., and disclosed the settlement payment to him. Even though Mr. Longoria did not volunteer the actual settlement agreement to the C.P.A. (who did not require it), Mr. Longoria did accurately describe its contents--in particular, explaining that there was no allocation of the award among his non-physical damages and his physical injuries. The C.P.A. testified that Mr. Longoria "made [it] clear to me that * * * [the settlement agreement] did not go through the process of identifying how much, if any, of this award as to what dollars." The C.P.A., who claimed to be familiar with the provisions of section 104(a)(2), never asked Mr. Longoria for a copy of the complaint in order to ascertain the underlying causes of action, and we do not presume that

Mr. Longoria should have known that the C.P.A. needed it, absent a request.

The C.P.A. interviewed Mr. Longoria about the facts of his lawsuit and settlement, and Mr. Longoria was correct in his answers. The C.P.A. asked Mr. Longoria whether he had been physically injured, and Mr. Longoria replied that he had been. While these injuries were not the main thrust of the lawsuit that Mr. Longoria filed and were not mentioned in the complaint, the injuries were, to Mr. Longoria, part and parcel of the discrimination that he had suffered, and his answer to the C.P.A. was correct. The C.P.A. testified that Mr. Longoria made it clear to him that "he did not have specific direction as to the nature of this award, and whether it was all for his personal injuries or part of it was for his personal injuries". Even with this ambiguity lingering, the C.P.A. did not inquire further into the nature of the claims Mr. Longoria brought against the State of New Jersey, but merely concluded that because Mr. Longoria suffered <u>some</u> physical injury, the <u>entire</u> settlement was non-taxable.

At trial the C.P.A. explained his reasoning for excluding the entire amount of the settlement from Mr. Longoria's income:

> [I]f they haven't given you a stipulation, if you did suffer these * * * [physical injuries], you're comfortable saying that you suffered injuries and damages, and it was part of the overall package, I don't know how to break it down, so we will exclude it.

This was erroneous advice.  The C.P.A. should have learned more about the claims Mr. Longoria asserted in the lawsuit and the terms of the settlement, and should then have determined whether there was any basis for allocating any portion of the proceeds to physical injuries.

It was not Mr. Longoria's fault that his C.P.A. did not ask him more questions or request more documentation regarding the underlying lawsuit and the relationship of his physical injuries to it.  We do not blame Mr. Longoria for his C.P.A.'s erroneous conclusion of law.  See United States v. Boyle, supra at 250 ("Courts have frequently held that 'reasonable cause' is established when a taxpayer shows that he reasonably relied on the advice of an accountant * * *, even when such advice turned out to have been mistaken").

Respondent insists that Mr. Longoria's reliance on his C.P.A.'s advice could not be reasonable because the C.P.A. based his advice on an unreasonable legal assumption and rendered his advice after unreasonably relying on the statements of Mr. Longoria without any further investigation.  We disagree. "When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice."  Id. at 251 (emphasis in original).  Mr. Longoria sought a C.P.A.'s advice on a substantive matter of tax law, i.e., whether his settlement

payment was taxable. Therefore, it was reasonable for Mr. Longoria to rely on that advice, even if the C.P.A. acted unreasonably in dispensing it. As the Supreme Court observed,

> Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place.

Id.; cf. sec. 1.6664-4(c)(1), Proced. & Admin. Regs. ("reliance may not be reasonable or in good faith if the taxpayer knew, or reasonably should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law").

On the basis of the record before us, we find that Mr. Longoria took reasonable steps to ensure that the settlement agreement was properly reported on his 2005 Form 1040 by seeking the advice of a C.P.A., and that he followed in good faith the advice he received from the C.P.A. by reporting the settlement proceeds on his Form 1040 in the manner that the C.P.A. advised. He will not be penalized for good-faith reliance on poor advice from a C.P.A.

## Conclusion

Because Mr. Longoria has failed to establish that he received the $156,667 settlement award, or any part thereof, from the State of New Jersey on account of personal physical injuries or physical sickness, we find that the $156,667 is not excludable

under section 104(a)(2) from Mr. Longoria's gross income for tax year 2005. However, because Mr. Longoria reasonably and in good faith relied on the advice of a C.P.A. in reporting the $156,667 settlement award as non-taxable income, we find that Mr. Longoria is not liable for the 20-percent accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the penalty under section 6662(a)</u>.