**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-93

UNITED STATES TAX COURT

JOSHUA SMITH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24635-12S.                    Filed September 18, 2014.

Joshua Smith, for himself.

<u>Erin K. Neugebauer</u>, for respondent.

SUMMARY OPINION

GUSTAFSON, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463[1] in effect when the petition was filed.  Pursuant to section 7463(b),

---

[1]All section references are to the Internal Revenue Code (26 U.S.C.) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The Internal Revenue Service ("IRS") determined a deficiency of $7,705 in and a section 6662(a) accuracy-related penalty of $1,541 on petitioner Joshua Smith's Federal income tax for 2010. This case arises from Mr. Smith's timely petition for redetermination of the tax and penalties in the statutory notice of deficiency.

Respondent has conceded that the unreported income at issue is not subject to self-employment tax. Additionally, respondent has conceded that Mr. Smith is not liable for the corresponding section 6662(a) accuracy-related penalty of $1,541. Thus, the only issue remaining for decision is whether the unreported income at issue was a settlement payment for physical injuries or physical sickness and therefore excludable from Mr. Smith's gross income under section 104(a)(2). We hold that it was not.

## Background

The parties jointly moved to submit this case for consideration pursuant to Rule 122, reflecting their agreement that the relevant facts could be presented

without a trial, and we granted that motion.[2] We incorporate by this reference the parties' stipulation of facts filed April 7, 2014, and the exhibits attached thereto.[3] Mr. Smith resided in the State of Pennsylvania when he filed his petition.

Mr. Smith's diagnosis

Mr. Smith was formerly employed as a server with MBFGMTW Limited Partnership d.b.a. Monterey Bay Fish Grotto ("MBFG") from approximately June 30, 2005, until MBFG terminated his employment on January 30, 2007. While he was employed by MBFG, Mr. Smith was diagnosed with attention deficit hyperactivity disorder ("ADHD") and major depressive disorder ("MDD"). Both ADHD and MDD are disabilities within the definition of "disability" in the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327.

As part of his treatment regimen he was prescribed a stimulant medication called Desoxyn (methamphetamine hydrochloride). One of Desoxyn's side effects

---

[2]The burden of proof is generally on the taxpayer, see Rule 142(a), and the submission of a case under Rule 122 does not alter that burden, see Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991); Rule 122(b).

[3]The stipulated record consists of: the facts alleged in Mr. Smith's petition filed with this Court on October 5, 2012, to the extent they are admitted in respondent's answer filed on November 30, 2012; the stipulation of facts; and the exhibits attached thereto.

is appetite suppression. This was problematic for Mr. Smith, who is small in stature. He is only five feet six inches tall, and his weight fluctuated between 120 and 140 pounds before he began taking the medication. Mr. Smith's primary care physician was concerned about the appetite suppressive effects of Desoxyn on his general physical and mental health, particularly if he lost any weight. As a result, the physician recommended that he consume as many calories as possible whenever he was able to do so.

MBFG's employee meal policy

This medical advice conflicted with MBFG's longstanding policy prohibiting servers from eating during a shift. The only exception that MBFG allowed to the policy was that a food server could eat if less than 30 minutes remained before the restaurant stopped seating guests, and if that server had no guests remaining at his or her assigned tables. First and second violations of the policy resulted in written warnings, while a third violation resulted in termination of the server's employment.

Mr. Smith recognized the tension between his physician's recommended eating regime and MBFG's restrictive meal policy. He informed MBFG of his disability and requested to be excepted from the policy. For a brief period, MBFG

initially excepted Mr. Smith from the policy and he was permitted to eat without restrictions as his appetite demanded.

However, management's patience with Mr. Smith's accommodation quickly waned, and on January 30, 2006, Mr. Smith was informed that MBFG would no longer accommodate his disability and that he was again subject to the meal policy. At that meeting MBFG explained the terms of the meal policy to Mr. Smith as follows: Mr. Smith was permitted to take up to two eight-minute breaks per shift, but only after first receiving permission from the manager; Mr. Smith was permitted to eat only pre-prepared food that was bought outside the restaurant; and Mr. Smith was permitted to consume his food only while standing in a particular location in the kitchen, in full view of all kitchen employees. Less than two weeks later, Mr. Smith was called to a meeting with MBFG management and disciplined for violating the meal policy. He was told that he would be terminated if he violated the meal policy again.

Administrative complaint and District Court lawsuit

Mr. Smith submitted a questionnaire to the Pennsylvania Human Relations Commission ("PHRC") on February 16, 2006, alleging that MBFG had engaged in discriminatory conduct. The following day Mr. Smith notified MBFG in writing of his decision to pursue formal charges of discrimination as a result of its meal

policy, retaliatory conduct, and refusal to accommodate his disability. On July 21, 2006, the PHRC dismissed Mr. Smith's complaint because the complaint did not establish probable cause to show discrimination.

MBFG terminated Mr. Smith on January 30, 2007. In response to his termination, Mr. Smith filed on July 24, 2007, a civil lawsuit against MBFG in the U.S. District Court for the Western District of Pennsylvania, Civil No. 07-01032, pursuant to the ADA and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. secs. 951-963 (West 2009). In the lawsuit Mr. Smith alleged that MBFG discriminated and retaliated against him because of his disability. Mr. Smith alleged that he suffered emotional distress, anxiety, depression and other consequential damages. Mr. Smith's amended complaint filed November 19, 2007, stated: "As a direct and proximate result of defendant's actions toward Plaintiff, as described herein, Plaintiff has suffered, and will continue to suffer, severe emotional distress, anxiety, depression and other consequential damages."

Settlement of the discrimination claims

In March 2010 Mr. Smith and MBFG executed a "Confidential Settlement Agreement and General Release". The settlement agreement described Mr. Smith's claims as follows:

> [Mr. Smith] * * * does hereby fully and forever release, discharge and hold harmless MBFG * * * from any and all liability upon claims, causes of action or obligations of every nature whatsoever, whether known or unknown, arising out of or relating to his employment and termination from employment or to any other act, event, failure to act or thing which has occurred or was created at any time before the date on which this Agreement is signed. Without limiting the generality hereof, this release covers claims or causes of action based upon torts (such as, for example, negligence, fraud, defamation, wrongful discharge); express and implied contracts; federal, state or local statutes and ordinances, including those which regulate employment practices (such as, for example, The Age Discrimination in Employment Act of 1967, The American [sic] with Disabilities Act, Title VII of the Civil Rights of 1964, the Pennsylvania Human Relations Act); and every other source of legal rights and obligations whatsoever.

This description includes no specific mention of physical injury or sickness. In this settlement agreement, MBFG agreed to pay $35,000 in exchange for Mr. Smith's release and discharge of any claims or causes of action he had against MBFG. Mr. Smith and MBFG's agreement allocated the settlement payment as follows:

> Plaintiff has requested, and the parties have agreed, that Five Thousand Dollars of the total payment be allocated to lost wages. MBFG shall report this portion of the payment to the Internal Revenue Service through an IRS Form W-2 and such payment shall be subject to applicable employment tax withholdings. Plaintiff has requested, and the parties have agreed, that the remainder of the sum be allocated to pain and suffering, emotional distress and the expense of suit. This portion shall be reported to the Internal Revenue Service through an IRS Form 1099. [Emphasis added.]

The settlement agreement also provided that Mr. Smith was "solely responsible for the tax liabilities due from him, if any, which result from his receipt of money under this Agreement". MBFG issued Mr. Smith a Form 1099-MISC, "Miscellaneous Income", and reported the $30,000 of nonemployee compensation paid to him during tax year 2010. Mr. Smith did not report the $30,000 of nonemployee compensation on his 2010 Federal income tax return.

On July 2, 2012, the IRS mailed Mr. Smith the notice of deficiency, which determined a deficiency in tax of $7,705, and on October 5, 2012, Mr. Smith filed his petition in this Court. On April 7, 2014, the parties filed their stipulation of facts and jointly moved to submit the case under Rule 122. By order dated April 7, 2014, the Court ordered the parties to submit simultaneous memoranda briefs by July 7, 2014. Mr. Smith did not file a brief, but we construe his position to be that the unreported income is excludable from his gross income pursuant to section 104(a)(2) because it was allocated to pain and suffering. Respondent's brief argues that the unreported income represents settlement proceeds that were not received on account of personal physical injuries or physical sickness and therefore are not excludable from gross income under section 104(a)(2).

Discussion

As a general rule, the IRS's determinations are presumed correct, and the taxpayer has the burden of establishing that the determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Mr. Smith has not contended that the burden of proof has shifted pursuant to section 7491(a), and the record shows no basis for such a contention. The record shows that Mr. Smith did receive the unreported income; thus, the presumption of correctness attaches in this unreported income case. See, e.g., Harris v. Commissioner, T.C. Memo. 2012-333.

I.      Taxability of settlement awards

Section 61(a) provides the following broad definition of the term "gross income": "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived". Section 61(a) is thus broad in its scope, and exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Section 104(a) provides that gross income does not include:

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness * * *.

\* \* \* \* \* \* \*

> For purposes of paragraph (2), emotional distress shall not be treated as a physical injury or physical sickness.  The preceding sentence shall not apply to an amount of damages not in excess of the amount paid for medical care (described in subparagraph (A) or (B) of section 213(d)(1)) attributable to emotional distress.

The legislative history shows that "[i]t is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress".  H.R. Conf. Rept. No. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.  Therefore, to be excludable from gross income under section 104(a)(2), a settlement award must be paid to a taxpayer on account of physical injuries or physical sickness, which does not include emotional distress or symptoms thereof.

Where damages are received pursuant to a settlement agreement like Mr. Smith's, the nature of the claim that was the actual basis for settlement controls whether those damages are excludable under section 104(a)(2).  United States v. Burke, 504 U.S. 229, 237 (1992).  Whether the settlement payment is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claims asserted in the lawsuit.  See Bent v. Commissioner, 87 T.C. 236, 244 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80 T.C. 1104, 1106-1107 (1983); Glynn v. Commissioner, 76 T.C.

116, 119 (1981), aff'd without published opinion, 676 F.2d 682 (1st Cir. 1982). The determination of the underlying nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972).

Where there is a settlement agreement, the determination of the nature of the claim is usually made by reference to the agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. at 126. If the settlement agreement lacks an express statement of the claims that payment was to settle, the intent of the payor (here, MBFG) is critical to that determination. Knuckles v. Commissioner, 349 F.2d at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), aff'g per curiam T.C. Memo. 1960-21.

II.     The nature of Mr. Smith's claim against MBFG

We surmise from Mr. Smith's petition that his position is that the unreported income is excludable from his income under section 104(a)(2) because it was partially allocated as damages for pain and suffering under the settlement agreement. (He makes no contention that the amounts were for medical care. Cf. sec. 104(a) (flush language).) Because the unreported income arose from Mr.

Smith's settlement agreement with MBFG, we must first look to the settlement agreement to determine the nature of the claims it was intended to settle. The settlement payment is excludable from gross income only if it was paid on account of physical injuries or physical sickness. Alternatively, if the settlement payment was paid on account of general pain and suffering or emotional distress, then it would not be excludable from gross income under section 104(a)(2).

As we have noted, the settlement agreement does not specifically mention any claims for physical injuries or physical sickness. And by its terms (quoted above), the settlement agreement does not provide that any portion of the payment was allocable to claims for physical injuries or physical sickness. Rather, it allocates the payment to "lost wages", "pain and suffering, emotional distress and the expense of suit." This Court has noted, however, that "'pain and suffering' is a broad term that includes emotional distress and its symptoms". See Longoria v. Commissioner, T.C. Memo. 2009-162. Settlement payments for non-physical injuries such as emotional distress are not excludable from income under section 104(a)(2). See id.; Hawkins v. Commissioner, T.C. Memo. 2007-286, aff'd, 386 Fed. Appx. 697 (9th Cir. 2010); see also Blackwood v. Commissioner, T.C. Memo. 2012-190 (holding that depression is a non-physical injury under section 104(a)).

When we look to Mr. Smith's Federal court complaint to see whether it states more particular claims (i.e., physical injuries or physical sickness) that would justify exclusion, see Burke, 504 U.S. at 237; Church v. Commissioner, 80 T.C. at 1106-1107, we find it does not. The claims Mr. Smith asserted against MBFG were for discrimination and retaliation; and the damages Mr. Smith claimed were: "severe emotional distress, anxiety, depression and other consequential damages". These injuries are non-physical. As we have previously held, section 104(a)(2) and the flush language of section 104(a) require that, to be excluded from income, any damages must arise from personal injuries or personal sickness other than emotional distress or the symptoms thereof. See Longoria v. Commissioner, T.C. Memo. 2009-162. Thus, we cannot hold that Mr. Smith's claims for damages were for physical injuries that might give rise to a settlement award that is excludable from income pursuant to section 104(a)(2).

The character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. See Agar v. Commissioner, 290 F.2d at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), aff'd without published opinion, 749 F.2d 37 (9th Cir. 1984). Mr. Smith has not met his burden to establish that he received the $35,000 settlement payment, or any identifiable part thereof, from MBFG on account of personal physical injuries or physical sickness.

For that reason we find that the $30,000 of unreported income is not excludable from Mr. Smith's gross income under section 104(a)(2) for his tax year 2010.

To reflect the foregoing,

Decision will be entered under

Rule 155.