T.C. Memo. 2016-34

UNITED STATES TAX COURT

JOSE M. DULANTO AND ANA M. DULANTO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19123-12.                              Filed March 2, 2016.

Jose M. Dulanto and Ana M. Dulanto, pro sese.

Michael K. Park and Priscilla A. Parrett, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined a deficiency of $28,681 in

petitioners' Federal income tax and an accuracy-related penalty of $5,736 pursuant

to section 6662(a) for the 2009 tax year.  Petitioners do not dispute respondent's

disallowance of petitioner Ana Dulanto's individual retirement account (IRA)

contribution deduction for 2009 or her receipt of income from a class action

**[\*2]** settlement agreement with Sears, Roebuck & Co. in that year. As a result, these issues are deemed conceded by petitioners. See Rules 34(b)(4), 149(b). Respondent concedes that petitioners are entitled to a deduction for Jose Dulanto's 2009 IRA contribution.

After concessions, the issues for decision are: (1) whether $83,169 of settlement proceeds received by Ana Dulanto (petitioner) under a settlement agreement with her former employer, American National Insurance Co. (ANICO), are excludable from petitioners' gross income under section 104(a)(2); and (2) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f). The case was submitted on the existing record after petitioners failed to appear for trial or to respond to an order to show cause. The stipulated facts are incorporated in our findings by this reference. Petitioners resided in California when they filed their petition.

[*3]   Petitioners were employed by ANICO as sales agents during the years leading up to 2009, the year in issue.  In 2008, petitioners filed separate lawsuits against ANICO.  Jose Dulanto's lawsuit, case No. BC399246, was filed in the Superior Court of the State of California for the County of Los Angeles.  In his complaint Jose Dulanto advanced 17 causes of action against ANICO, including: racial, national origin, and disability discrimination; failure to pay wages; failure to provide meal periods; engaging in unfair business practices; and intentional infliction of emotional distress.  Jose Dulanto's allegations of emotional distress stated that he suffered from insomnia, depression, exhaustion, fatigue, stomach problems, tension headaches, neck pain, back pain, rashes, and other symptoms.  He stated that he sought medical assistance and was diagnosed with depression and anxiety and was prescribed medicine as a result of his experiences at ANICO.  Jose Dulanto sought "compensation for his health problems and serious emotional distress he suffered as a consequence of" ANICO's actions.  Jose Dulanto also filed worker's compensation claims against ANICO for injuries suffered in a car accident while working for the company.

Also in 2008, petitioner filed a class action lawsuit against ANICO on behalf of certain current and former sales agents of the company.  The lawsuit, case No. BC401025, was originally filed in the Superior Court of the State of

**[\*4]** California for the County of Los Angeles but was subsequently removed to Federal court. The lawsuit was brought "as a nationwide collection action * * * for claims under the Fair Labor Standards Act ("FLSA") and a California statewide class action * * * for claims under California law" and sought to recover, among other things: unpaid overtime compensation, unpaid additional pay for the failure to provide meal and rest periods, unpaid statutory amounts for the failure to provide accurate wage statements, injunctive relief to provide the required information on wage statements, restitution of unlawfully withheld wages, reasonable attorney's fees, and costs of suit. The complaint did not allege any specific personal physical injuries, either to petitioner or to Jose Dulanto.

On or about September 24, 2009, petitioners and ANICO executed a settlement agreement and mutual release. In the settlement agreement petitioners dismissed all claims for relief alleged or that could have been alleged, including but not limited to assertions of verbal abuse, workplace harassment, and emotional distress. The settlement agreement specifically covered the allegations in petitioners' separate lawsuits against ANICO. The settlement agreement also stated that it was intended to encompass the entire agreement between the parties concerning all matters affecting all claims but stated that it did "not have any effect whatsoever on Mr. Dulanto's worker's compensation claims." Although a

**[*5]** draft unsigned settlement agreement briefly mentioned a waiver and release of "any claim for damages, including but not limited to loss of consortium", the final version did not contain this wording.

Under the settlement agreement, ANICO agreed to pay petitioners $501,775. This amount was allocated as follows: 82% to Jose Dulanto and 18% to petitioner. After taking into account payments previously made to petitioners, ANICO issued settlement payments of $403,731 and $83,169 to Jose Dulanto and petitioner, respectively. The settlement agreement did not allocate the payments to any specific claim or allegation of injury made by petitioners.

Petitioners timely filed their joint Form 1040, U.S. Individual Income Tax Return, for 2009. Their return was prepared by a certified public accountant (C.P.A.).

OPINION

Section 61(a) defines "gross income" as "all income from whatever source derived". Caselaw interprets this definition to be broad in scope and states that exclusions from gross income must be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955); Helvering v. Clifford, 309 U.S. 331, 334 (1940). One such exclusion is found in section 104(a)(2), which provides that gross income does not

**[*6]** include the amount of any damages (other than punitive damages) received on account of personal physical injuries or physical sickness. This rule is meant to cover all damages that flow from a physical injury or physical sickness, including damages received by the injured party's spouse on account of a claim for loss of consortium. See H.R. Conf. Rept. No. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041. Although emotional distress or the symptoms thereof are not treated as a physical injury or physical sickness, the cost of medical care attributable to emotional distress is. Sec. 104(a); see Blackwood v. Commissioner, T.C. Memo. 2012-190; Longoria v. Commissioner, T.C. Memo. 2009-162.

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether those damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). The determination of the nature of the claim is usually made by reference to the settlement agreement. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), aff'g T.C. Memo. 1964-33; Robinson v. Commissioner, 102 T.C. 116, 126 (1994), aff'd in part, rev'd in part, and remanded on another issue, 70 F.3d 34 (5th Cir. 1995). If the settlement agreement lacks express statements of the claims that payment was to settle, the intent of the payor is determined by taking into consideration all of the facts and circumstances,

**[\*7]** including but not limited to, the amount paid, the circumstances that led to the settlement agreement, and the original complaint filed by the injured party.  Green v. Commissioner, 507 F.3d 857, 868 (5th Cir. 2007), aff'g T.C. Memo. 2005-250; Knuckles v. Commissioner, 349 F.2d at 613; Robinson v. Commissioner, 102 T.C. at 127; Ahmed v. Commissioner, T.C. Memo. 2011-295, aff'd, 498 F. App'x 919 (11th Cir. 2012); Longoria v. Commissioner, T.C. Memo. 2009-162.  The burden of proof is on the taxpayer to establish that the Commissioner's determination in the notice of deficiency is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer must present objective and credible evidence of the payor's intent in order for the burden of proof to shift to the Commissioner.  See sec. 7491(a); Longoria v. Commissioner, T.C. Memo. 2009-162.

The settlement agreement between ANICO and petitioners does not allocate the payments to a claim of personal physical injury or physical sickness.  The agreement does not specify any particular claim motivating the settlement.  Petitioners did not present objective and credible evidence that ANICO intended that any part of their settlement payments be allocated to claims for loss of consortium.

The record shows that the settlement was unallocated among the multiple claims of petitioners.  Many of petitioners' allegations in their respective

**[*8]** complaints dealt with discrimination, the failure to pay wages, and a hostile work environment rather than physical injuries or physical sickness. Petitioner's class action lawsuit against ANICO does not allege that she sustained any physical injuries while employed by the company; and her complaint does not mention a claim for loss of consortium arising from the personal physical injuries of Jose Dulanto. The basis of the claims in petitioner's suit relates to ANICO's failure to pay wages and overtime, failure to provide itemized wage statements, and failure to provide meal and rest periods. We conclude that the damages ANICO paid petitioner as part of the settlement agreement were mainly for the resolution of claims in her class action lawsuit and not for speculative claims of loss of consortium. Therefore, the settlement payment petitioner received as part of the settlement agreement with ANICO is includible in petitioners' income for 2009.

Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

[*9]   Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  It appears that the recomputed understatement of income tax well exceeds $5,000, which is greater than 10% of the tax required to be shown on petitioners' 2009 tax return.  Thus, respondent's burden of production has been satisfied.

Once the Commissioner has met the burden of production, the taxpayers must come forward with persuasive evidence that the penalty is inappropriate because, for example, they acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449.  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners set forth no specific facts to show that the penalty should not apply.  For example, they did not offer any testimony or other evidence to show that they relied on professional tax advice.  Even though their return was prepared by a C.P.A., they did not provide any evidence that the C.P.A. was a competent professional, that they provided the C.P.A. with necessary and accurate

**[\*10]** information, and that they actually relied on the C.P.A.'s judgment.  See

Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299

F.3d 221 (3d Cir. 2002).  Accordingly, we sustain respondent's determination of

the accuracy-related penalty for 2009.

To reflect the foregoing,

Decision will be entered

under Rule 155.